IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MICHAEL SAUNDERS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CORIZON HEALTH, *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 22-cv-02441-LKG<br><br>Dated: June 12, 2023 |

## MEMORANDUM OPINION

Self-represented plaintiff Michael Saunders, a state inmate currently confined at Eastern Correctional Institution in Westover, Maryland, filed the instant suit pursuant to 42 U.S.C. § 1983, against Corizon Health;[1] Dr. Mulugeta Akal; Godwin Nwanna, RN; and Oge Vivian Nwankwo, RN.[2] *See* ECF No. 1.[3] Construed liberally, Plaintiff's Complaint raises an Eighth Amendment claim for denial of medical care while he was housed in the Maryland Reception, Diagnostic and Classification Center ("MRDCC") in Baltimore, Maryland. *Id.* at 1-4. He seeks monetary damages. *Id.* at 5.

Defendants have moved to dismiss the Complaint, or in the alternative, for summary judgment. ECF No. 14. The Court informed Plaintiff that, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the failure to file a response in opposition to the Defendants' motion may result in dismissal of the Complaint. ECF No. 15. Plaintiff responded, ECF No. 22, and Defendants replied, ECF No. 24.

The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, Defendants' Motion, construed as one for summary judgment, shall be **GRANTED**.

---

[1] The case is stayed as to Corizon Health Inc. ECF No. 18.

[2] The Clerk shall be directed to amend the docket to list the full and correct names of Defendants.

[3] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files (CM/ECF) system.

**Background**

Plaintiff claims that on March 24, 2022, he was assaulted by a correctional officer and taken to the medical unit, where Nurse Nwanna treated him for mace exposure and gave him two ice packs for the knots on his head before sending him back to his cell. Compl., ECF No. 1 at 1, 4. Later that day, Plaintiff found himself getting up off the floor of his cell with a pool of spit surrounding his face and no knowledge of how he got there. *Id.* at 1. As a result, Plaintiff placed a sick call and "was seen right away, on the 25 of March," even though "the sick call process takes about 2 to 3 days . . . most of the time." *Id.* During the ensuing visit, Nurse Nwankwo checked Plaintiff's blood pressure and sent him back to his cell. *Id.*

According to Plaintiff, "the same thing happen[ed] two more times" and Nurse Nwankwo told him "it sounds like he may have had a concussion," so she referred him to Dr. Akal. *Id.* When Plaintiff asked Dr. Akal to send him to a hospital, Dr. Akal denied the request stating, "it's no need to send you out. It's just your br[ain] telling your body that it's in danger, and just have to relax." *Id.*

Thereafter, Plaintiff suffered migraines, seizures, and head pain, and he feared that he might die in his sleep. *Id.* at 2. Plaintiff continued to place sick calls, but Dr. Akal denied his continued requests to be taken to a hospital, stating that the mental health medication Plaintiff was taking "can help with seizures." *Id.*

Defendants do not dispute that Plaintiff saw Nurse Nwanna after a physical altercation and use of force incident on March 24, 2022. *See* Medical Records, ECF No. 14-4 at 54-55. Plaintiff had facial irritation and reddened eyes from pepper spray and was crying and spitting on the floor. *Id.* On examination, Nurse Nwanna noted beads of sweat on Plaintiff's forehead and two minor swellings/hematoma, but his skin was intact on other parts of the body. *Id.* The affected area on Plaintiff's face was flushed copiously under running tap water and with sterile eye wash. *Id.* Nurse Nwanna noted that this treatment was effective and well-tolerated, as the redness in Plaintiff's eyes, the facial irritations, and overall body discomfort were mitigated. *Id.* Nurse Nwanna also gave Plaintiff two ice compresses for the minor swelling on his forehead. *Id.* Plaintiff was observed for stability and returned to the population per protocol. *Id.*

According to Defendants, Plaintiff did not see Nurse Nwankwo in sick call until March 27 2022,[4] for claims of confusion or a suspected seizure. *Id.* at 50. Because the occurrence was not witnessed by any medical staff, Nurse Nwankwo directed Plaintiff to remain in the medical unit for observation. *Id.* Plaintiff refused, however, and asked to be brought back to his cell. *Id.* Nurse Nwankwo allowed Plaintiff to return to his cell but referred him to a provider for further evaluation to rule out seizure disorder. *Id.* During Nurse Nwankwo's time with Plaintiff, she did not observe any signs or symptoms of concussion or seizure. *Id.* She avers that this was her only visit with Plaintiff regarding his complaint of fainting or seizure. Decl. of Nwankwo, ECF No. 14-6 at ¶ 6.

As a result of Nurse Nwankwo's referral, Dr. Akal saw Plaintiff for reported seizure-like activity on March 28, 2022. ECF No. 14-4 at 48-49. At that time, Plaintiff reported he was involved in an altercation where he was "hit on the right side of his forehead," which Plaintiff believed caused a seizure. *Id.* Plaintiff stated that he did not "recall what happened but woke up on the cell floor with foaming substance beside[] him . . . 2 days ago [but] none since." *Id.* Upon examination, Plaintiff's vital signs were normal, he was in no apparent distress, and Dr. Akal observed no bruises or swelling on the forehead where Plaintiff alleged he was hit. *Id.* Dr. Akal formed a provisional assessment of unwitnessed convulsions and noted that Plaintiff had been taking Tegretol for mental health issues. *Id.* Dr. Akal also instructed Plaintiff to return to the clinic if he experienced a recurring episode. *Id.*

Dr. Akal did not believe that Plaintiff needed to be sent to a hospital because his alleged fall was not witnessed, there was no note of loss of consciousness during his visit with Nurse Nwanna, and Plaintiff only had small swelling on the forehead without breakage of the skin. Decl. of Akal, ECF No. 14-3 at ¶ 11. According to Dr. Akal, one self-reported episode is not sufficient for a diagnosis of seizure disorder. *Id.* When Dr. Akal saw Plaintiff on March 28, 2022, Plaintiff did not tell him he had headaches or migraines,[5] and there was nothing about his appearance that suggested he had a concussion. *Id.* As Dr. Akal was unaware of any other seizures, he did not see a need to refer Plaintiff to a neurologist for further examination. *Id.*

---

[4] Plaintiff was seen by Victoria Emelogu, NP for a scheduled provider visit regarding unrelated complaints on March 25, 2022. *See* ECF No. 14-4 at 52.

[5] Plaintiff's medical records reflect that he complained of migraines following his transfer from MRDCC. *See* ECF 22-1.

Following the March 28, 2022 visit, Plaintiff's only complaints to Dr. Akal involved his right hand, for which he had prior surgery. *Id.* at ¶¶ 13-15, 17, 19, 21-23, 25-29, 31. On August 16, 2022, Plaintiff transferred from MRDCC to Chesapeake Detention Facility, and Dr. Akal had no further involvement in his care. *Id.* at ¶ 30.

**Standard of Review**

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF No. 14. Motions styled in this manner implicate the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp.2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Defendants' Motion is titled as a motion to dismiss or, alternatively, for summary judgment, Plaintiff was on notice that the Court could treat it as one for summary judgment and

rule on that basis. Thus, the Court will review Plaintiff's claims under the Rule 56(a) standard and will consider the exhibits filed in support of the dispositive motion.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## Discussion

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, Plaintiff must demonstrate that Defendants' acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no

expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need).

After a serious medical need is established, a successful claim requires proof that the defendant was subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 842. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference."). "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson*, 195 F.3d at 695-96; *see also Jackson*, 775 F.3d at 178 (describing the applicable standard as "exacting"). A mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Scinto*, 841 F.3d at 225. Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at *4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012). Further, the inmate's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely

desirable." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (citing *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)). Additionally, where the seriousness of the injury is not apparent, a delay in treatment does not violate the Eighth Amendment. *Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980) (delay "does not violate the Eighth Amendment where the seriousness of the injury is not apparent").

Here, even if Plaintiff has shown that, objectively, he was suffering from a serious medical need, he fails to satisfy the subjective prong as he has not shown that Defendants failed to provide the necessary care. Plaintiff acknowledges that, following the use of force incident on March 24, 2022, he was transported to the medical unit where Nurse Nwanna assessed his injuries, cleaned off pepper spray, and gave him ice packs for his forehead. Likewise, after Plaintiff submitted a sick call request reporting that he fell unconscious, he was promptly seen by Nurse Nwankwo, who suggested that he remain in the medical unit for evaluation and, alternatively, referred Plaintiff to a provider when he insisted on returning to his cell.

Nor has Plaintiff shown deliberate indifference on the part of Dr. Akal. After receiving Nurse Nwankwo's referral, Dr. Akal met with Plaintiff on the following day, reviewed his medical chart, and assessed his vitals. Because Plaintiff appeared normal, was in no distress, and reported only one episode regarding a possible seizure, Dr. Akal did not believe that he needed to be sent to a hospital or a neurologist at that time. Rather, Dr. Akal instructed Plaintiff to return to the medical unit if he experienced another episode. Thereafter, Plaintiff did not report any other seizures, headaches, or migraines during subsequent visits with Dr. Akal.[6] Thus, Dr. Akal had no knowledge of further issues that would have required additional or different treatment.

In his response opposing Defendants' Motion, Plaintiff alleges that Defendants have not provided his "complete and full medical records." ECF No. 22 at 2. He denies that he refused to be observed, and he claims that he reported migraines and dizziness on March 24 and 26, 2022. *Id.* at 3-4. To be clear, Defendants do not deny that Plaintiff reported seizure-related symptoms during his visit with Nurse Nwankwo, thus necessitating the visit with Dr. Akal. Plaintiff, however, has marshalled no evidence to support his unverified assertion that Defendants have withheld medical records or that they were aware of other seizure-related incidents that would

---

[6] Although Plaintiff's medical records reflect that he regularly complained of migraines following his transfer from MRDCC, such records have no bearing on the claims raised in the instant Complaint.

have necessitated a referral to an outside provider. *Cf. Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (explaining that "a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes"); *see also* Fed. R. Civ. P. 56(c)(1)(A). Meanwhile, Defendants have presented exhibits and affidavits to show that at the time of the incidents giving rise to the claims raised by Plaintiff in this matter, Defendants were aware of only one occurrence where Plaintiff fell unconscious.

On this record, Plaintiff has not shown that Defendants were deliberately indifferent to a serious medical need. Therefore, Defendants Nurse Nwanna, Nurse Nwankwo, and Dr. Akal are entitled to summary judgment on Plaintiff's claims against them.[7]

### Conclusion

For the foregoing reasons, Defendants' Motion, construed as one for summary judgment, is granted as to Nurse Nwanna, Nurse Nwankwo, and Dr. Akal. Because Defendant Corizon Health, Inc. has filed bankruptcy proceedings in which an automatic stay has been issued, this action shall be administratively closed without prejudice to the right of Plaintiff to move to reopen this action as to Corizon Health, Inc. for good cause shown. A separate Order follows.

June 12, 2023
Date

LYDIA KAY GRIGGSBY
United States District Judge

---

[7] To the extent Plaintiff raises state law claims of medical malpractice and negligence, the Court declines to exercise supplemental jurisdiction and thus will dismiss such claims without prejudice. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966).